**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERIC SANCHEZ,

               Plaintiff,

vs.                                                    Case No.  3:14-cv-827-J-JRK

CAROLYN W. COLVIN,
Commissioner of Social Security,

               Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Eric Sanchez ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is due to the following: "[a]rthritis[,] depression[, and] bipolar [disorder]." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed October 3, 2014, at 226 (emphasis and some capitalization omitted); see Tr. at 49. On July 11, 2011, Plaintiff filed the application for SSI, see Tr. at 33, and on July 12, 2011, Plaintiff filed the application for DIB, alleging an onset disability date of October 10, 2009. Tr. at 201-02. (DIB). The application for SSI does not appear to have been included in the administrative transcript. Plaintiff's applications were denied initially, see Tr. at 93, 135-36 (DIB), 94, 140-41 (SSI), and were denied upon reconsideration, see Tr. at 128, 151-52 (DIB), 129, 146-47 (SSI).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 10), filed October 3, 2014; Reference Order (Doc. No. 12) entered on October 6, 2014.

On February 28, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 39-62. At the time of the hearing, Plaintiff was forty-eight (48) years old. Tr. at 42. The ALJ issued a decision on March 28, 2013, finding Plaintiff not disabled and denying Plaintiff's claims. Tr. at 23-33. Plaintiff then requested review by the Appeals Council, Tr. at 18, and submitted evidence to the Council in the form of contentions from his attorney, Tr. at 5; see Tr. at 290-92 (Plaintiff's attorney's contentions). On May 21, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final Decision of the Commissioner. On July 16, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises a single argument on appeal: whether the ALJ's failure to include all the limitations imposed by Plaintiff's treating physician, Dr. Kenneth Nixon, M.D., in the hypothetical presented to the VE during the hearing, or at a minimum discuss the reason why certain limitations were rejected, renders the ALJ's decision not supported by substantial evidence. See Memorandum in Support of the Complaint (Doc. No. 15; "Pl.'s Mem."), filed November 7, 2014, at 5-9. On February 3, 2015, Defendant filed a responsive memorandum. See Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds that an additional explanation is needed regarding the limitations imposed by Dr. Nixon before it can be determined whether the ALJ's rejection of these limitations is supported by substantial evidence. Accordingly, the Commissioner's final decision is due to be reversed and remanded.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 25-32. At step one, the ALJ noted that Plaintiff "has not engaged in substantial gainful activity . . . since October 10, 2009, the alleged onset date." Tr. at 25 (emphasis and citations omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: osteoarthritis, bilateral shoulder arthritis, hypertension, and bipolar disorder." Tr. at 25 (emphasis and citations omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citations omitted). The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) with limitations. [Plaintiff] can complete only occasional overhead reaching in the workplace and must avoid concentrated exposure to hazards such as machinery and heights.  In addition, he is limited to no more than simple, routine tasks that involve up to 3-step commands with only occasional changes in the work setting, occasional judgment, and occasional decision-making.

Tr. at 27 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." Tr. at 31 (emphasis and citation omitted).  After considering the Plaintiff's age (forty-five years old on the alleged disability onset date), education ("at least a high school education" and "able to communicate in English"), work experience, and RFC, the ALJ found at step five that "there are jobs that exists in significant numbers in the national economy that [Plaintiff] can perform."  Tr. at 31 (emphasis and citations omitted).  Relying on the testimony of the VE, the ALJ determined that Plaintiff can perform representative jobs such as "Towel Folder," "Tag Inserter," and "Garment Sorter."  Tr. at 32.  The ALJ concluded that Plaintiff "has not been under a disability . . . from October 10, 2009, through the date of this decision."  Tr. at 32 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 295 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence- even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises only one argument on appeal: whether the ALJ's failure to include in the hypothetical presented to the VE all limitations imposed by Dr. Nixon, or at a minimum discuss why certain limitations were rejected, when the ALJ had afforded "significant weight" to Dr. Nixon's assessment, renders the ALJ's decision not supported by substantial evidence.  Pl.'s Mem. at 5-9.  Specifically, Plaintiff claims the ALJ should have included the following limitations in the hypothetical presented to the VE: "[his] need to recline every fifteen minutes, [his need for] more frequent breaks, [his likely] missing more than four days per month, [his] limited ability to sit and stand, [and his] need to shift positions at will" ("limitations at issue").  Pl.'s Mem. at 9.

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy.  See 20 C.F.R. § 416.920(a)-(f).  "In order for a VE's testimony to

constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). While the hypothetical question must include all of a claimant's impairments, it need not include impairments properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 620 n.1 (11th Cir. 1987) (per curiam).

The following question was posed by the ALJ to Silvio Reyes, the VE who testified at Plaintiff's hearing:

> [P]lease assume a hypothetical individual of [Plaintiff's] age, education, vocational background, capable of light work, with the following additional restrictions. This person would be limited to occasional overhead reach. This person should avoid concentrated exposure to hazards such as machinery and heights. This person would be limited to simple, routine tasks, with up to three-step commands, with occasional changes in the work setting, occasional judgment, and occasional decision making.

Tr. at 60. Based on the hypothetical, the VE opined that although Plaintiff would not be capable of performing any of his past work, Plaintiff could still perform other work as a "towel folder," "tag inserter," and "garment sorter." Tr. at 60-61. Plaintiff's attorney then asked the VE if the hypothetical individual would still be able to perform these jobs if he had some of the limitations at issue, such as "need[ing] an additional break every hour for approximately 15 minutes," and "miss[ing] four or more days of work per month." Tr. at 61. The VE answered "that [these additional limitations] would possibly preclude an individual from engaging in competitive employment." Tr. at 61. The ALJ essentially ignored this exchange between Plaintiff's attorney and the VE and adopted the VE's initial opinion that Plaintiff is

capable of performing the jobs of "towel folder," "tag inserter," and "garment sorter." Tr. at 31-32. Therefore, the ALJ found that Plaintiff is not disabled. Tr. at 32-33.

The hypothetical did not include all the limitations imposed by Dr. Nixon. For the VE's testimony to nevertheless constitute substantial evidence, the ALJ must have properly rejected the limitations at issue.

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[,] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1). (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"' (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

With regard to a treating physician,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If the ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

---

[4] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed

"'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

From February 2010 through July 2011, Plaintiff was seen by Dr. Nixon on at least seven occasions for pain management.[5] See Tr. at 356-57 (February 25, 2010); Tr. at 354-55 (July 26, 2010); Tr. at 352-53 (October 4, 2010); Tr. at 350-51 (November 5, 2010); Tr. at 348-49 (February 14, 2011); Tr. at 346-47 (June 7, 2011); Tr. at 339-340, 344-45 (July 13, 2011); see generally Tr. at 229, 342-62. At the July 13, 2011 visit, Dr. Nixon prepared a physical RFC assessment of Plaintiff.[6] Tr. at 339-40. Dr. Nixon diagnosed Plaintiff with "[l]ow [b]ack [p]ain, [r]otator [c]uff, [e]asy [f]atigue, [b]i[p]olar [disorder], [and increased] cholesterol." Tr. at 339. According to Dr. Nixon, Plaintiff's condition is severe enough to "[c]onstantly" interfere with his ability to perform simple work-related tasks. Tr. at 339. Dr. Nixon found that "[Plaintiff would] need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon[.]" Tr. at 339. Dr. Nixon indicated that as a result of Plaintiff's impairments, he can only sit for fifteen minutes at a time and stand or walk for only ten minutes at a time. Tr. at 339. During an eight-hour workday, Plaintiff can only sit two hours and stand or walk two hours at a time. Tr. at 339. Plaintiff would "need a job

---

[5] Defendant suggests that Plaintiff first saw Dr. Nixon in October 2010 and states that Dr. Nixon completed a "residual function questionnaire" at Plaintiff's fifth appointment with Dr. Nixon. See Def.'s Mem. at 2. A review of the administrative transcript, however, suggests that Plaintiff actually saw Dr. Nixon in February 2010 and then in July 2010 as well. Tr. at 354-57. Therefore Dr. Nixon would have completed the residual functional questionnaire at Plaintiff's seventh, rather than fifth appointment.

[6] In his decision, the ALJ refers to the physical RFC assessment completed by Dr. Nixon, stating that "on June 13, 2011, [the doctor] noted [Plaintiff] can sit, stand, or walk for up to two hours during an eight hour workday . . . ." Tr. at 29. Defendant, however, states that "[a]t the fifth, July appointment, Dr. Nixon completed a "residual functional questionnaire." Def.'s Mem. at 2. The undersigned acknowledges that the date Dr. Nixon provided in the RFC questionnaire ,"13 J.," is ambiguous, as it could refer to January, June, or July. Tr. at 340. Given that Plaintiff saw Dr. Nixon on July 13, 2011, rather than January 13 or June 13, however, the undersigned assumes July 13 to be the correct date and that the ALJ was simply mistaken.

which permits shifting positions at will from sitting, standing, or walking[, and Plaintiff would] need to take unscheduled breaks during an 8-hour workday" hourly for fifteen minutes each break. Tr. at 339. Dr. Nixon further opined that Plaintiff could only "occasionally" lift and carry 20 lbs. in a competitive work situation," and that Plaintiff could "never" carry 50 lbs. Tr. at 340. Dr. Nixon stated that Plaintiff has "limitations in doing repetitive reaching, handling, and fingering." Tr. at 340. Finally, Dr. Nixon opined that Plaintiff would likely be absent from work "[m]ore than four times a month" as a result of his impairments. Tr. at 340.

In his decision, the ALJ summarized Dr. Nixon's assessment of Plaintiff, noting the following:

> [Dr. Nixon] opined that [Plaintiff] can still complete limited light work tasks despite his hypertension, low back pain, and remote bilateral rotator cuff injuries. Specifically, on June 13, 2011,[7] Dr. Nixon noted [Plaintiff] can sit, stand, or walk for up to two hours during an eight hour workday and is limited to only occasional overhead reaching with frequent fine and gross manipulation tasks at work. Dr. Nixon also noted that [Plaintiff] will miss more than four days of work each month due to his various symptoms and pain distractions.

Tr. at 29 (citation omitted). After providing this summary, the ALJ stated that he "gives Dr. Nixon's overall opinion significant weight because it is generally consistent with the substantial evidence, including [Plaintiff's] self-reported limitations." Tr. at 29. He explained how Dr. Nixon's finding that Plaintiff "is limited to only occasional overhead reaching" is consistent with Plaintiff's report to the consultative examiner Cicero V. Lazo, M.D. that he has "difficulty reaching overhead" but could "lift up to 20 pounds" as well as his "bilateral shoulder pain complaints, his decreased left shoulder range of motion, and his reports that the pain in his right shoulder intensifies after raising it 90 degrees or more." Tr. at 29. However, the ALJ did not provide any explanation as to why he evidently rejected portions

---

[7]  This date should read "July 13, 2011." See supra n. 6.

of Dr. Nixon's opinion without explicitly saying so. Thus the undersigned is ultimately unable to determine with certainty whether the ALJ's failure to include all of the limitations at issue in the hypothetical was inadvertent or intentional, and if it was intentional, the reasons for doing so.

Defendant argues that "[g]iving significant weight to Dr. Nixon's opinion did not require the ALJ to adopt each limitation in the opinion," citing Saunders v. Colvin, No. 4:14cv83-MW-CAS, 2014 WL 7178511, at *18 (N.D. Fla. Dec. 15, 2014) for the proposition that "giving an opinion significant weight is distinct from giving it controlling weight and adopting it wholesale." Def.'s Mem. At 6. Defendant correctly states this proposition from Saunders but it does not carry the day here. Although giving significant weight to Dr. Nixon's overall opinion does not require the ALJ to adopt each limitation in the opinion, the ALJ is required to include all limitations in the hypothetical unless he has properly rejected them. See McSwain, 814 F.2d at 620 n.1 (emphasis added). The question for the Court is therefore whether the ALJ has properly rejected the limitations at issue.[8] However, because the ALJ did not provide any explanation as to why he did not include all of Dr. Nixon's limitations in the hypothetical, the Court is unable to determine whether substantial evidence supports the ALJ's rejection of these limitations and judicial review is frustrated.[9]

---

[8] The undersigned notes that in Saunders, cited by Defendant, the court held that a limitation did not have to be included in a hypothetical question when the statement had been properly rejected. 2014 WL 7178511, at *8.

[9] Defendant contends the ALJ's opinion is supported by substantial evidence, and Defendant provides a number of reasons (that the ALJ failed to provide) why the administrative transcript allegedly supports the ALJ's overall decision. Def's Mem. at 5-10. Defendant's analysis cannot serve as post hoc justifications to save the ALJ's otherwise infirm decision. See Owens, 748 F.2d at 1516. It is not the duty of the Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ. See Austin v. Astrue, No. 5:07cv52/MCR/EMT, 2008 WL 2385520, at *8 n.7 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings"); see also Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991).

## V. Conclusion

The ALJ failed to articulate adequate reasons supported by substantial evidence to discount the limitations at issue imposed by Dr. Nixon.

After due consideration, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to section 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A) State with particularity the weight the ALJ is affording to Dr. Nixon's opinion; if a portion of Dr. Nixon's opinion is discounted, the ALJ should articulate reasons showing good cause for discounting it; and
>
> (B) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk of Court is directed to close the file.

3. If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past benefits to seek the Court's approval of attorney fees pursuant to 42 U.S.C. § 406(b). See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on May 11, 2015

.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

efh
Copies to:
Counsel of Record